United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

In re: ACACIA MEDIA TECHNOLOGIES CORPORATION.

_____/

NO. C 05-01114 JW

**ORDER DENYING ACACIA'S MOTION TO DISMISS NEW DESTINY'S EIGHTH COUNTERCLAIM AND GRANTING ACACIA'S MOTION TO DISMISS NEW DESTINY'S NINTH COUNTERCLAIM**

## I. INTRODUCTION

This is a patent infringement lawsuit in which Plaintiff Acacia Media Technologies Corporation ("Acacia") claims that various internet-based adult entertainment providers infringe U.S. Patents Nos. 5,132,992 and 6,144,702, which Acacia owns. In response, Defendant New Destiny Internet Group, LLC ("New Destiny") asserts nine counterclaims against Acacia. Presently before this Court is Acacia's Motion to Dismiss New Destiny's Eighth and Ninth Counterclaims for Failure to State a Claim. (See Acacia's Motion to Dismiss Defendants' Eighth and Ninth Counterclaims for Failure to State a Claim, hereinafter "Acacia's Motion," Docket Item No. 43 in Central District of California Case No. SA CV 02-1040.)[1] Based upon the arguments advanced by the parties, and for the reasons set forth below, this Court GRANTS Acacia's Motion in part and DENIES it in part.

---

[1] Acacia's Motion purports to "move[] to dismiss Defendant Game Link's . . . Eighth . . . and Ninth Counterclaim[s] . . . for failure to state a claim under Rule 12(b)(6)." (Acacia's Motion at 1:3-6.) Acacia purports to attach Game Link's Answer and Counter-Claim as Exhibit 1 to its Motion. In fact, Exhibit 1 is Defendant New Destiny's Answer and Counter Claim. (Acacia's Motion Ex. 1.) Accordingly, this Court treats Acacia's Motion as a Motion to Dismiss New Destiny's (not Game Link's) Eighth and Ninth Counterclaims.

## II. BACKGROUND

New Destiny alleges, <u>inter alia</u>, that Acacia is and has been "threaten[ing], harass[ing], and intimidat[ing] [New Destiny] and other companies in [New Destiny's] industry into paying [Acacia] for license[s] to patents [that] it and they have not infringed and do not infringe." (New Destiny's Opposition to Acacia's Motion, hereinafter "New Destiny's Opposition," Docket Item No. 188 in Central District of California Case No. SA CV 02-1040, Ex. 1 at 42:12-14.) According to New Destiny, Acacia perceived New Destiny and others in New Destiny's industry as unsophisticated, and so "create[d] an atmosphere of fear so as to force [New Destiny] and other companies in [New Destiny's] industry . . . to pay royalties rather than defend against objectively baseless patent infringement suits." (New Destiny's Opposition Ex. 1 at 42:14-20.) As part of its campaign to "create an atmosphere of fear," Acacia allegedly

> mailed documents to [New Destiny] and others in [New Destiny's] industry, falsely stating that Acacia had patent claims 'covering content delivery methods such as video on demand, audio on demand, and video streaming.' Acacia made no mention in this correspondence that the scope of its patent claims was very narrow and covered only very specific systems and methods. Instead Acacia stated, incorrectly and without investigation, that [New Destiny's] systems and methods used Acacia's patented systems and methods.

(New Destiny's Opposition Ex. 1 at 43:2-8.) Furthermore, New Destiny alleges, Acacia repeatedly and publicly overstated the breadth of its patents. (New Destiny's Opposition Ex. 1 at 43:9-13 ("Acacia . . . continued to falsely state that its patents covered all methods and systems for transmitting audio and/or video information in press releases, interviews, and in pleadings to this Court[,] [but] [t]hese public statements all ignored the narrow scope of the claims that were obtained by the named inventors of the patents now allegedly owned by Acacia"); <u>see also</u> New Destiny's Opposition Ex. 1 at 44:8-26, 47:1-15, 47:20-48:7.) "Had Acacia, in fact, conducted . . . analyses [of prior art and other validity issues]," New Destiny alleges, "[Acacia] would have been fully aware of the prosecution histories of its patents and that its patent claims could not be given the broad scope they later urged in their media campaign." (New Destiny's Opposition Ex. 1 at 43:24-26.) "As such," New Destiny concludes,

those later claims were knowingly false and intended to intimidate, harass, and instill fear in those companies in [New Destiny's] industry, with the intent of interfering with the business relationships between [New Destiny] and its existing and prospective customers, and to further intimidate companies in [New Destiny's] industry to entering into unnecessary patent royalty agreements.

(New Destiny's Opposition Ex. 1 at 43:26-44:3.) New Destiny claims that Acacia's posturing was part and parcel of its business plan to "'secure a revenue stream of some $200 million a year, without writing a single line of code.'" (New Destiny's Opposition Ex. 1 at 45:1-2.) To support its claim, New Destiny quotes an article from technologymarketing.com, which allegedly states that:

> [Acacia CEO Paul] Ryan and his team of executives decided it would be better for the firm if they could get other companies to pay up without the hassle of forcing them to do so through a lawsuit . . . [.] Acacia also decided that alleged infringers would sign up more quickly if it looked as if everyone else were jumping on the bandwagon. Ryan launched a rollout plan that involved convincing a host of smaller firms to sign up, and the subsequent publicizing of those signings in order to create a sense of momentum for Acacia's claims . . . . By selecting fragmented markets rather than going after big players like MSN or AOL, Acacia hoped to avoid getting embroiled in a debilitating legal battle. 'My approach is to get some deals done and get some goodwill,' says Rob Berman, Acacia's senior vp [sic] of business development. 'I don't want to end up in the bowels of legal hell.' . . . Acacia hoped that the adult entertainment industry would be low-hanging fruit. After all, online adult entertainment is a fragmented and apparently incoherent set of companies, full of business amateurs who, Acacia hoped, would probably rather pay a percentage than get halled into court.

(New Destiny's Opposition Ex. 1 at 45:3-17.)

On July 14, 2003, in a separate patent infringement lawsuit, <u>Acacia Media Technologies Corporation v. Wild Ventures, LLC</u>, No. SACV 02-1053 AHS (MLGx), which involved the same patents at issue in this lawsuit, Judge Alicemarie Stotler granted Acacia a default judgment and an injunction against Defendant Wild Ventures, LLC ("Wild Ventures"). (New Destiny's Opposition Ex. 1 at 45:18-26.)[2] According to New Destiny, "Similar default injunctions were entered against Extreme Productions (SACV 02-CV-1062), Go Entertainment (SACV 03-CV-204), Lace Productions (SACV 02-CV-1047), and WebZotic LLC (SACV 02-CV-1065)." (New Destiny's Opposition Ex. 1 at 45:26-46:2.) Thereafter, Acacia allegedly embarked upon a media campaign that misrepresented the nature of the default injunctions. Although the default injunctions were entered because the defendants

---

[2] Later, on November 21, 2003, pursuant to stipulation, this Court set aside the default judgment entered against Wild Ventures.

3

failed to respond to Acacia's lawsuit, Acacia allegedly told the media that "these rulings vindicated Acacia's claims regarding the allegedly broad scope of its patents." (New Destiny's Opposition Ex. 1 at 46:14-15.) New Destiny cites an article in CNET news.com as an illustration. In it, the author explains that,

> The company [Acacia] has won a preliminary injunction against five adult entertainment Web sties, barring them from using on-demand digital video or audio online, or providing advertising links to any other such sites. The ruling was a default decision, after the five companies declined to respond to a lawsuit, but does mark the first court *validation* of <u>sweeping</u> patent claims that could ultimately encompass virtually every site offering online multimedia content. Acacia owns patents on the process of transmitting compressed audio or video, which is one of the most fundamental multimedia technologies used on the Internet. 'We will not allow for the unauthorized use of our technology,' said Rob Berman, Acacia's general counsel. 'Although not our preference, we are willing to use the power of the court where necessary to stop unauthorized use.'

(New Destiny's Opposition Ex. 1 at 46:16-27 (first emphasis added).) On July 18, 2003, Rob Berman allegedly told Wired News that "Acacia's patents 'cover just about every form of digital audio and video distribution... [sic] these [sic] kinds of activities violate Acacia's intellectual property rights: pushing MP3s from peer-to-peer groups, streaming newscasts from Internet radio sites and delivering movies through cable networks.'" (New Destiny's Opposition Ex. 1 at 47:1-5.) Furthermore, on September 12, 2003, and again on September 15, 2003, Acacia allegedly issued press releases, in which it stated "that its 'DMT technology, which is covered by pioneering patents, relates to audio and video transmission and receiving systems, commonly known as audio on-demand, video on-demand, and audio/video streaming, and is used for distributing content via several means including Internet, cable television, direct broadcast satellite, and wireless systems.'" (New Destiny's Opposition Ex. 1 at 47:20-25.)

New Destiny argues that Acacia's patent infringement and business tort claims against New Destiny are "objectively baseless." (New Destiny's Opposition Ex. 1 at 41:26-42:5, 47:26-27, 48:16-18, 49:4-7.) New Destiny also argues that Acacia's statements to the press are "false, misleading, and intimidating" and "were made . . . with the intent to make others reluctant to engage in . . . business with Defendant, to intimidate others in Defendant's industry into paying Acacia for patent licenses that they did not need to enter but entered to avoid further harassment and potential baseless infringement

4

litigation." (New Destiny's Opposition Ex. 1 at 47:26-48:6.) Acacia's conduct, Defendant counterclaims, constitutes Violation of CAL. BUS. & PROF. CODE § 17200 (Eighth Counterclaim) and Abuse of Process (Ninth Counterclaim). (New Destiny's Opposition Ex. 1 at 41:14-49:19.) Acacia here moves to dismiss these counterclaims.

### III. STANDARDS

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the claims stated in a complaint. In ruling on a motion to dismiss, the court must accept as true all allegations of material fact and must construe said allegations in the light most favorable to the non-moving party. Western Reserve Oil & Gas Co. v. New, 765 F.2d 1428, 1430 (9th Cir. 1985). Any existing ambiguities must be resolved in favor of the pleading. Walling v. Beverly Enterprises, 476 F.2d 393, 396 (9th Cir. 1973). Conley v. Gibson, 355 U.S. 41 (1957), sets forth the strict standard for granting a Rule 12(b)(6) motion to dismiss. A Rule 12(b)(6) motion to dismiss must not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. at 45-46. As the Ninth Circuit has observed, "The [Rule 12(b)(6)] motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." Gilligan v. Jamco Develop. Corp., 108 F.3d 246, 249 (9th Cir. 1997). A motion to dismiss a counterclaim under Rule 12(b)(6) is treated the same as a motion to dismiss a complaint. Fabricant v. Sears Roebuck, 202 F.R.D. 306, 308 (S.D. Fla. 2001) (citing KRW Sales, Inc. v. Kristel Corp., 154 F.R.D. 186, 187 (N.D. Ill. 1994)).

### IV. DISCUSSION

**A. New Destiny's Eighth Counterclaim: Violation of CAL. BUS. & PROF. CODE § 17200**

New Destiny's Eight Counterclaim against Acacia is for Violation of CAL. BUS. & PROF. CODE § 17200. The purpose of § 17200 is to preserve fair business competition. Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999) (quoting Barquis v. Merchants Collection Ass'n, 7 Cal. 3d 94, 110 (1972)). Section 17200 prohibits five wrongs: (1) unlawful business acts/practices; (2) unfair business acts/practices; (3) fraudulent business

acts/practices; (4) unfair, deceptive, untrue, or misleading advertising; and (5) any act prohibited by CAL. BUS. & PROF. CODE §§ 17500-17577.5. CAL. BUS. & PROF. CODE § 17200; WILLIAM L. STERN, BUS. & PROF. C. § 17200 PRACTICE § 3:13 (2005). Only the first three wrongs are relevant here. (See New Destiny's Opposition at 5:6-6:27 (arguing that New Destiny has alleged that Acacia has engaged in "fraudulent" business acts), 7:1-11:2 (arguing that New Destiny has alleged that Acacia has engaged in "unlawful" business acts), 11:3-13:13 (arguing that New Destiny has alleged that Acacia has engaged in "unfair" business acts).)

At minimum, New Destiny arguably alleges that Acacia engaged in an "unfair" business acts or practices. Generally speaking, the "unfair" standard under § 17200 is broad by design. STERN, supra, § 3:113 ("The 'unfair' standard is intentionally broad, allowing courts maximum discretion to prohibit new schemes to defraud") (citing Motors, Inc. v. Times Mirror Co., 102 Cal. App. 3d 735, 740 (1980)). However, in Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., 20 Cal. 4th 163 (1999), the California Supreme Court changed the test of "unfairness" for commercial cases. Id. § 3:114. In Cel-Tech, the Court held that, in cases between business competitors, "unfair" means "conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." Cel-Tech, 20 Cal. 4th at 187. Acacia and New Destiny dispute whether Cel-Tech's narrower test of "unfairness" applies here. (Acacia's Motion at 4:24 ("Defendant does not come close to pleading an antitrust-related cause of action [as required by Cel-Tech]"); New Destiny's Opposition at 12:23-24 ("Defendant need not satisfy Cel-Tech's test for 'unfair' to state a claim under section 17200"); Acacia's Reply Brief Re: Acacia's Motion, hereinafter "Acacia's Reply," Docket Item No. 198 in Central District of California Case No. SA CV 02-1040, at 6:5 ("Defendants therefore cannot escape the standard set forth in Cel-Tech").) This Court need not determine whether Cel-Tech's narrower test of "unfairness" applies here as a matter of law because, even if it does, New Destiny states a claim under it.

Antitrust law covers patent infringement lawsuits initiated in bad faith. As the Ninth Circuit

observed in Handgards, Inc. v. Ethicon, Inc., 601 F.2d 986, 993 (9th Cir. 1979),

> [Patent] infringement actions initiated and conducted in bad faith contribute nothing to the furtherance of the policies of either the patent law or the antitrust law. The district court was correct in holding, in effect, that such actions may constitute an attempt to monopolize violative of Section 2 of the antitrust law.

New Destiny has alleged that Acacia initiated its patent infringement lawsuit against New Destiny in bad faith. In particular, New Destiny alleges that:

> Acacia has (i) made knowingly false and/or misleading statements about the systems and methods covered by its patents; (ii) made knowingly false and misleading statements about the validity of its patents . . . ; (iii) made false statements, without investigations, about alleged infringement of its patents by Defendant and others; (iv) filed and is prosecuting objectively baseless patent infringement lawsuits, without pre-suit investigation against Defendant and others in Defendant's industry; (v) filed and prosecuted objectively baseless patent infringement lawsuits, without pre-suit investigation, against companies which Acacia's executives concede to do not even need to license the patents-in-suit; (vi) filed and is prosecuting objectively baseless claims of unfair competition, interference with business advantage, and trade libel against Defendant and others in Defendant's industry; (vii) sought and obtained default injunction orders against certain companies incorporating knowingly false statement about the scope of its patent claims; and (viii) has touted those default injunction orders in the press to validate its knowingly false statements about the systems and methods covered by its patents.

(New Destiny's Opposition Ex. 1 at 41:21-42:9.) Construing New Destiny's pleading in the light most favorable to it, this Court concludes that New Destiny has alleged conduct that "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws . . . , or otherwise significantly threatens or harms competition." Cel-Tech, 20 Cal. 4th at 187; see also Lynch v. Magnavox Co., 94 F.2d 883 (9th Cir. 1938) (holding that plaintiff stated an antitrust claim against defendants when it alleged that defendants attempted to monopolize by initiating 55 patent infringement lawsuits and mailing numerous letters threatening to sue for patent infringement); Kobe, Inc. v. Dempsey Pump Co., 198 F.2d 416 (10th Cir. 1952) (holding that evidence that patent holders had given wide publicity to the number of patents they held--many of which had expired--supported a finding that the patent holders had engaged in monopolistic practices).

Accordingly, this Court DENIES Acacia's Motion to Dismiss New Destiny's Eight Counterclaim for Violation of CAL. BUS. & PROF. CODE § 17200.

**B. New Destiny's Ninth Counterclaim: Abuse of Process**

New Destiny's Ninth Counterclaim against Acacia is for Abuse of Process. As far as this Court can tell, New Destiny premises its Abuse of Process counterclaim upon two "abuses" of "process." First, New Destiny appears to allege that *this* lawsuit, which New Destiny characterizes as "objectively baseless," is abuse of process. (See New Destiny's Opposition Ex. 1 at 49:5-7 ("Acacia has abused the legal process by instituting and maintaining its objectively baseless patent infringement and business tort claims against Defendant . . . to accomplish a purpose for which the legal system is not designed or intended").) Second, New Destiny appears to allege that Acacia's lawsuits against *others* is abuse of process. (See New Destiny's Opposition Ex. 1 at 45:18-46:27, 47:26-48:7, 48:14-15, 48:21-24 (alleging that Acacia, after obtaining default injunctions against other defendants in other cases, embarked upon a media campaign that misrepresented the nature of the default injunction); see also New Destiny's Opposition at 20:19-23 ("Acacia has filed a multitude of dubious lawsuits against defendants it perceived as 'low-hanging fruit,' then deceptively leveraged publicity generated by those lawsuits to coerce defendants--and others--into paying for licenses from Acacia").) Neither of these alleged "abuses" of "process" are a sufficient basis upon which to premise an abuse of process claim.

First, "[t]he mere filing of a complaint or maintenance of a lawsuit, even for an improper purpose, does not constitute an abuse of process." 6A CAL. JUR. 3D *Assault and Other Willful Torts* § 17 (2003); see also Loomis v. Murphy, 217 Cal. App. 3d 589, 595 (1990) ("[I]t is well settled that . . . 'the mere filing or maintenance of a lawsuit--even for an improper purpose--is not a proper basis for an abuse of process action'") (citing Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc., 42 Cal. 3d 1157, 1169 (1986)); RESTATEMENT (SECOND) OF TORTS § 682 cmt. a (1977) ("The gravamen of [abuse of process] . . . is not . . . the wrongful initiation of . . . civil proceedings"); 5 B.E. WITKIN, SUMMARY OF CALIFORNIA LAW § 460 (9th ed. 1988) ("Obviously, the mere filing of a lawsuit is not an abuse of process"). Thus, Acacia's initiation of this lawsuit cannot form the basis of New Destiny's abuse of process counterclaim. See Loomis, 217 Cal. App. 3d at 595 (affirming the

8

dismissal of an abuse of process claim because the pleading "contained no allegations of misuse of process other than the filing of the complaint"). New Destiny conclusorily argues that its "allegations are extensive and encompass much more than 'the mere filing or maintenance of a lawsuit.'" (New Destiny's Opposition at 22:6-7.) Notably, however, New Destiny fails to support this argument with specific citations to its pleading.

Second, Acacia's other lawsuits against other defendants--and the default injunctions obtained therefrom--cannot form the basis of *New Destiny's* abuse of process counterclaim against Acacia. In every case upon which New Destiny relies, the alleged "process" that the defendants/counterdefendants allegedly "abused" is always directed at the plaintiff/counterclaimant. See Coleman v. Gulf Ins. Group, 41 Cal. 3d 782, 788 (1986) (plaintiff alleged that defendant wrongfully appealed a judgment in plaintiff's favor); Drum v. Bleau, Fox & Assocs., 107 Cal. App. 4th 1009, 1014 (2003) (plaintiff alleged that defendant wrongfully levied plaintiff's bank accounts); Brown v. Kennard, 94 Cal. App. 4th 40, 43-44 (2001) (plaintiff alleged that defendant wrongfully levied plaintiff's deposit account); Clark Equip. Co. v. Wheat, 92 Cal. App. 3d 503, 526 (1979) (counterclaimant alleged that counterdefendant wrongfully obtained two contempt orders against counterclaimant). Here, Acacia's other lawsuits against other defendants--and the default injunctions obtained therefrom--simply are too remote to form the basis of *New Destiny's* abuse of process counterclaim against Acacia.

As a final matter, Acacia's alleged misrepresentations to the media regarding the scope of the default injunctions is not the type of "process" protected by the abuse of process claim. "For purposes of the tort of abuse of process, the process that is abused must be *judicial* process. The essence of the tort lies in the misuse of the *power of the court*. It is an act done in the name of the court and under its authority for the purpose of perpetrating an injustice." 6A CAL. JUR. 3D *Assault and Other Willful Torts* § 12 (2003) (emphasis added). Statements (or misstatements) to the media, such as those allegedly made by Acacia, do not abuse judicial process.

Accordingly, this Court GRANTS Acacia's Motion to Dismiss New Destiny's Ninth

Counterclaim for Abuse of Process.

## V. CONCLUSION

For the reasons set forth above, this Court DENIES Acacia's Motion to Dismiss New Destiny's Eighth Counterclaim and GRANTS Acacia's Motion to Dismiss New Destiny's Ninth Counterclaim.

Dated: July 19, 2005

/s/James Ware
JAMES WARE
United States District Judge

05cv1114mtd-cc-8&9

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Alan P. Block blocka@hbdlawyers.com
Alfredo A. Bismonte abismonte@mount.com
Annamarie A. Daley aadaley@rkmc.com
Bradford P. Lyerla blyerla@marshallip.com
Daniel Harlan Fingerman dfingerman@mount.com
David A. York david.york@lw.com
David J. Silbert djs@kvn.com
Emmett J. McMahon ejmcmahon@rkmc.com
Harold J. McElhinny HmcElhinny@mofo.com
J. Timothy Nardell EfilingJTN@cpdb.com
James Michael Slominski jslominski@hh.com
Jan J. Klohonatz jklohonatz@tcolaw.com
Jason A. Crotty jcrotty@mofo.com
Jeffrey D. Sullivan jeffrey.sullivan@bakerbotts.com
Jeffrey H. Dean jdean@marshallip.com
Jonathan E. Singer singer@fr.com
Juanita R. Brooks brooks@fr.com
Kevin D. Hogg khogg@marshallip.com
Kevin I. Shenkman shenkmank@hbdlawyers.com
Maria K. Nelson mknelson@jonesday.com
Marsha Ellen Mullin memullin@jonesday.com
Michael J. McNamara michael.mcnamara@bakerbotts.com
Mitchell D. Lukin mitch.lukin@bakerbotts.com
Morgan William Tovey mtovey@reedsmith.com
Patrick J. Whalen pwhalen@spencerfane.com
Paul A. Friedman pafriedman@mofo.com
Rachel Krevans rkrevans@mofo.com
Richard R. Patch rrp@cpdb.com
Robert F. Copple rcopple@lrlaw.com
Roderick G. Dorman dormanr@hbdlawyers.com
Sean David Garrison sgarrison@lrlaw.com
Stephen E. Taylor staylor@tcolaw.com
Stephen P. Safranski spsafranski@rkmc.com
Stephen S. Korniczky stephenkorniczky@paulhastings.com
Todd Glen Miller miller@fr.com
Todd R. Tucker ttucker@rennerotto.com
Victor de Gyarfas vdegyarfas@foley.com
Victor George Savikas vgsavikas@jonesday.com
William J. Robinson wrobinson@foley.com
William R. Overend woverend@reedsmith.com
William R. Woodford woodford@fr.com

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN MAILED TO:**

Adam Robert Alper
Latham and Watkins
135 Commonwealth Drive
Menlo Park, Ca., 94025,

11

**United States District Court**
For the Northern District of California

Albert L. Underhill
Merchant & Gould
80 S. 8th Street
Suite 3200
Minneapolis, MN 55415

Andrew D. Raymond
Marshall Gerstein & Borun LLP
6300 Sears Tower
233 South Wacker Drive
Chicago, IL 60606-6357

C Mark Kittredge
Perkins Coie Brown & Bain PA
P. O. Box 400
Phoenix, AZ 85001-0400

Christopher B. Fagan
Fay Sharpe Fagan Minnich & McKee
7th Floor
1100 Superior Avenue
Cleveland, OH 44114-2518

David P. Pearson
Winthrop & Weinstine, PA
225 S. 6th Ste., 3500
Minneapolis, MN 55415

Douglas W. Sprinkle
Gifford Krass Groh Sprinkle Anderson & Citkowski, P.C.
2701 Troy Center Drive, Suite 330
P. O. Box 7021
Troy, MI 48007-7021

Fritz Byers
824 Spitzer Bldg.,
520 Madison Avenue
Toledo, OH 43604

Jay R. Campbell
Renner Otto Boisselle & Sklar LLP
1621 Euclid Avenue
19th Floor
Cleveland, OH 44115

John C. Reich
Merchant & Gould
80 S. 8th Street
Suite 3200
Minneapolis, MN 55402

Mark C. Johnson
Renner Otto Boisselle & Sklar
19th Floor
1621 Euclid Avenue
Cleveland, OH 44115

Mark D. Schneider
Gifford Krass Groh Sprinkle Anderson & Citkowski, P.C.
2701 Troy Center Drive
Suite 330
P. O. Box 7021
Troy, MI 48007-7021

Rebecca A. Bortolotti
Merchant & Gould
80 S. 8th Street
Suite 3200
Minneapolis, MN 55402

**Dated: July 19, 2005**                                    **Richard W. Wieking, Clerk**

                                                                    **By:/s/JWchambers**
                                                                       **Ronald L. Davis**
                                                                       **Courtroom Deputy**